```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SWEET PEOPLE APPAREL, INC.,

            Plaintiff,

       v.                              14 CV 1647 (KMW)

LAZEON CORP., ET AL.,

            Defendants.

------------------------------x
                                       New York, N.Y.
                                       July 13, 2015
                                       2:03 p.m.
Before:

                HON. KIMBA M. WOOD,

                                       District Judge

                    APPEARANCES

ARNOLD & PORTER, LLP
     Attorneys for Plaintiff
BY:  MATTHEW THOMAS SALZMANN, ESQ.


MICHAEL SLAPO, ESQ.
     Attorney for Defendants
```

1               (In open court)
2               THE COURT:  Good afternoon.  Please have a seat.
3               (Case called)
4               MR. SALZMANN:  Mat Salzmann for Sweet People Apparel.
5               THE COURT:  Good afternoon.
6               MR. SALZMANN:  Good afternoon.
7               MR. SLAPO:  Michael Slapo for Lazeon Corporation.
8               THE COURT:  Okay, thank you.  Mr. Slapo, are you an
9    attorney?
10              MR. SLAPO:  I am an attorney.
11              THE COURT:  Okay.  Admitted in this court?
12              MR. SLAPO:  I am not admitted before the federal
13   courts.
14              THE COURT:  Okay.  Well, we called this to try to move
15   the case along, pending further movement needed after the order
16   I've entered, and my understanding is, Mr. Slapo, that you
17   requested to be here today to be heard, not to make a formal
18   appearance but to be heard.
19              MR. SLAPO:  That's correct.  The Court called for a
20   conference, and out of respect for the Court, I didn't want to
21   waste anyone's time with further adjournments.
22              THE COURT:  Well, thank you.  I wonder if you could
23   stand and tell us whatever you can about the substance of this
24   suit.
25              MR. SLAPO:  Sure.  So Lazeon Corporation was a

1    corporation engaged in the manufacture and sale of garments.
2    Its sole customer for the last several years has been a company
3    called Deb Shops that has filed for bankruptcy, I think under
4    Chapter 7, or it was converted to Chapter 7 liquidation.
5           The company, Deb Shops, commissioned Lazeon
6    Corporation to manufacture goods under a brand that was a
7    private label for Deb Shops called "Toxic" and I believe it was
8    exclusively distributed to and sold to Deb Shops.
9           We received a cease and desist letter from counsel for
10   Sweet People Apparel, and we responded that while we don't
11   believe that the goods alleged to be infringing are infringing
12   or contain infringing design, nevertheless, we sought to comply
13   by ceasing the sale and distribution of that product, which was
14   made for Deb Shops.
15          We provided an accounting of the inventory sold and
16   the profits, or lack thereof, for those goods.  Deb Shops filed
17   for bankruptcy.  Lazeon's sole customer was Deb Shops.  The
18   majority of bills for Deb Shops went unpaid.  There's no assets
19   in Lazeon Corporation.
20          THE COURT:  There are no assets in Lazeon Corporation?
21          MR. SLAPO:  Not that I'm aware of.  It's a sole
22   proprietorship.  The sole shareholder is my father.  He's in
23   his 70s.  This was his only customer.  I don't know of any
24   other customers or sales that are ongoing for the company.
25          THE COURT:  Did he have an accountant?

1          MR. SLAPO:  He does not have an accountant.  He's
2     filed on his own, his own tax returns.  I think he had a tax
3     attorney for customs purposes, at one point.  But I asked him
4     whether or not he had somebody prepare a profit and loss
5     statement or something like that.  He doesn't have an
6     accountant or anything.
7          So just for purposes of customs he had this one tax
8     attorney, and I asked whether or not he could provide further
9     information, but that was the first and only -- the only
10    information he provided came from the manufacturer, and that's
11    what we provided over to Mr. Salzmann.
12         THE COURT:  Now, when Lazeon sold articles of clothing
13    to Deb Shops, did they accompany them with an invoice?
14         MR. SLAPO:  Yes, there should be purchase orders, and
15    I think we provided them.  If not, Matt, you know, I'm happy to
16    try and locate them.
17         THE COURT:  Purchase orders and invoices, bills.
18         MR. SLAPO:  Yes --
19         THE COURT:  And is there proof of payment?
20         MR. SLAPO:  The goods were returned, your Honor.  I
21    don't know that there was ever payment made on those goods.
22         THE COURT:  Were all the goods returned?
23         MR. SLAPO:  Only the ones that were unsold, which I
24    thought were the majority, and so those goods were returned and
25    subsequently destroyed.

1          THE COURT:  All right.
2          MR. SLAPO:  Due to the Chapter 7 filing, I don't know
3  that there was any retained anywhere.
4          THE COURT:  Right.  Now, your father, I take it, had
5  money receipts from his sales?
6          MR. SLAPO:  Generally speaking, I would assume.
7          THE COURT:  Of his product.
8          MR. SLAPO:  I would have to find out, sorry.  I don't
9  know.
10         THE COURT:  You think he was sending them on some sort
11 of commission?
12         MR. SLAPO:  They were all on credit.  They were all
13 extended net-30-day sales; so I don't know whether or not there
14 was ever payment received for these goods.
15         THE COURT:  And did your father keep books and
16 records?
17         MR. SLAPO:  Yes.
18         THE COURT:  Is there any reason you could not allow
19 Mr. Salzmann to have access to them?
20         MR. SLAPO:  No issue, no issue.  I mean, whatever my
21 father has access to.  A lot of the information that he relies
22 on comes from the manufacturer.  It's essentially -- I would
23 call it almost like a commission relationship with the
24 manufacturer.  So when we received the request for information
25 from Mr. Salzmann, we contacted the manufacturer, and they

1  provided us with the information.  Most of it was in Microsoft
2  Word format, but whatever we received, I'm happy to provide.
3            THE COURT:  All right.  Well, let me ask Mr. Salzmann.
4  Are there questions that you want to ask Mr. Sapo, and do you
5  have a proposal as to where we go from here?
6            MR. SALZMANN:  Well, your Honor, just to be clear,
7  we've obtained some records from Deb Shops prior to their
8  insolvency.
9            THE COURT:  Oh, I saw the discrepancy in the numbers.
10           MR. SALZMANN:  And we actually have a breakdown from
11 them as to the amount of units that they actually returned to
12 Lazeon.
13           THE COURT:  I see.
14           MR. SALZMANN:  And that number was approximately
15 3,700; so the balance was sold through and was not returned.
16 And if your Honor will recall, also in your December you
17 ordered that those products, to the extent they're in existent,
18 be turned over to my client for destruction.  Obviously, we
19 haven't received any of those.
20           THE COURT:  Now, why wasn't that done?
21           MR. SLAPO:  From what I understand, your Honor, the
22 order was entered far after the goods were returned, and the
23 goods were destroyed prior to issuance of any order.
24           THE COURT:  All right.  Would the books and records
25 show how many units were destroyed?

1           MR. SLAPO:  I can try and find that out.  What was
2    received back from Deb Shops, I'm sure we have some type of
3    receipt for it.
4           THE COURT:  Okay.  Do you work in this business?
5           MR. SLABO:  No.  I'm an attorney at Fox, Rothschild.
6           THE COURT:  And you're the son of the owner?
7           MR. SLAPO:  I am.
8           THE COURT:  Okay.  Well, I appreciate your coming.  I
9    think, at this point, we ought to decide where we go from here,
10   and I'd like to hear from plaintiff's counsel what ideas you
11   have about where you'd like to go from here.
12          MR. SALZMANN:  Well, your Honor, to the extent that
13   there are documents, I certainly would like to see them.  I
14   think we're entitled to them.  We didn't just go out and file
15   this lawsuit.  We contacted him first.
16          THE COURT:  I think he's indicated that you can see
17   their documents.  I'd like for this to be as inexpensive as
18   possible because some of the expense might well fall on your
19   father, Mr. Slapo.  Where are the books and records kept?
20          MR. SLAPO:  Your Honor, my father's only office, or
21   Lazeon's only office, was closed; so he no longer rents any
22   office space.  Likely, they're in boxes at my parents' house.
23          THE COURT:  Do you work in the city?
24          MR. SLAPO:  I do.
25          THE COURT:  Would it be possible for you to have the

1  boxes brought to your law firm so that Mr. Salzmann could take
2  a look at them there?
3          MR. SLAPO:  I'm sure.  I'm happy to make whatever
4  inquiries are necessary to resolve the matter.
5          THE COURT:  Good.
6          MR. SLAPO:  Like I said, this isn't from a lack of
7  cooperation.  We felt that we had complied with all of the
8  requests and the order to this point, but whatever information
9  would be helpful to resolving it is fine.
10         THE COURT:  I think, one, among several, reasons that
11 Mr. Salzmann should have the opportunity to, himself, go
12 through all of the documents is the discrepancy between the
13 3,200 units disclosed by Lazeon and the 11,124 units disclosed
14 by Deb Shops.  So given that, I think he has a right to take
15 his own look at the documents and see what he can learn from
16 them.
17         So I appreciate your making that offer, and if you
18 could simply make all the books and records available,
19 including canceled checks, if there are such, including bank
20 records, anything you have relating to the sales and returns of
21 these items, it would be very helpful.
22         MR. SLAPO:  Hopefully, they're in electronic format.
23 That would make life easier.
24         THE COURT:  Okay.  Well, I'll ask you.  How long do
25 you think it would take you to quickly inventory what's there?

1                MR. SLAPO:  Well, it's not from a lack of trying that
2    I haven't already solicited this information from my dad.  Like
3    I said, he's in his 70s.  Most of the information comes from a
4    Chinese manufacturer, and I've seen e-mails that have come over
5    from the Chinese manufacturer.  I'll go through them again with
6    my dad and see if that doesn't shed some light on it.
7                One of the concerns that I have is, you know, what Deb
8    Shops reports in terms of what they believe to have been the
9    product containing the infringing design versus the information
10   that we have, which only showed four style numbers and
11   specifies the quantity of those styles.  Whether or not there
12   was just a discrepancy in terms of what Deb Shops believed to
13   be, you know, that particular design, as opposed to what we
14   believe to be that particular design.
15               THE COURT:  Well, the style number is given to the
16   product by whom?
17               MR. SLAPO:  That's a good question.  We have purchase
18   order numbers and style numbers associated with those products.
19               THE COURT:  Is it these style numbers?
20               MR. SLAPO:  These style numbers that I believe that
21   are allocated by Deb Shops or by Lazeon, but those are the
22   style numbers that we believe to be ones that contain this
23   design.
24               THE COURT:  Okay.  Rather than speculating, I think
25   the first thing to do is all the records of the company should

1  probably be produced because if you don't do that, if you
2  produce just portions, you're going to be back and forth all
3  the time on discovery disputes.  So it makes sense just to do a
4  rule 26 turnover of all relevant documents, and construe
5  "relevance" broadly so that you don't have to be coming back
6  here.
7          MR. SLAPO:  Sure.
8          THE COURT:  All right.  Then once you've looked at the
9  books and records, you'll know where you want to go with the
10 case, and you should feel free to contact us to let us know
11 what should happen next.
12         MR. SALZMANN:  Great.  I appreciate that, your Honor.
13         MR. SLAPO:  Your Honor, I'm happy to provide all this
14 information.  So irrespective of that, if the company has no
15 assets, where does this go?
16         THE COURT:  Well, I don't know, but I think the first
17 step is for Mr. Salzmann to reassure himself in that regard,
18 and the quicker he sees the documents, the quicker we'll know
19 where we go.
20         MR. SLAPO:  Okay.
21         THE COURT:  I think he will want to see documents from
22 you to assure him that the company has no assets.
23         MR. SALZMANN:  Thank you, your Honor.
24         THE COURT:  Thank you.
25         (Adjourned)